**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| DION C. ABRAHAM, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. 1:22-CV-152-SNLJ |

## <u>MEMORANDUM AND ORDER</u>

The Commissioner of the Social Security Administration denied plaintiff Dion C. Abraham's application for Disability Insurance Benefits under Title II of the Social Security Act.  Plaintiff now seeks judicial review of the Administrative Law Judge's ("ALJ") decision.  The case is fully briefed.  As explained below, the ALJ's decision is supported by substantial evidence on the record as a whole and the decision of the Commissioner is affirmed.

### I.    Procedural History

Plaintiff was born in 1981.  Plaintiff protectively filed an application for Disability Insurance Benefits on August 11, 2020. [Tr. 81–85.]  His claim was rejected, and he requested a hearing by an ALJ.  [Tr. 97–98.]  After the hearing, the ALJ issued an unfavorable decision, finding that plaintiff was not disabled.  [Tr. 10–30.]  Plaintiff filed

for review by the Appeals Council, and the Appeals Council denied plaintiff's request for review.  [Tr. 1–7.]  Thus, the ALJ's decision is the final decision of the Commissioner. Plaintiff seeks judicial review.

## II.   Disability Determination—Five Steps

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A); *see also id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. §§ 404.1520(a), 416.920(a).  First, the Commissioner considers the claimant's work activity.  If the claimant is engaged in substantial gainful activity, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§

2

404.1520(a)(4)(ii), 416.920(a)(4)(ii).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."  Soc. Sec. Ruling 85-28 (listing basic work activities).  The claimant carries the burden to show that an impairment is severe.  *Kirby*, 500 F.3d at 707–08.

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled— regardless of age, education, and work experience—and this ends the analysis.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating

3

physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history. . . ." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  If the ALJ determines that the claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, then burden of production shifts to the Commissioner to show that the claimant maintains the RFC to perform other work that exists in significant numbers in the national economy.  *See Bladow v. Apfel*, 205 F.3d 356, 358–59 n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Though the burden of production shifts to the Commissioner, the claimant keeps the burden of persuasion to prove disability.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v).  If the claimant cannot make an adjustment to other work, then the claimant is disabled.  *Id.*

### III.    The ALJ's Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 7, 2018.  [Tr. 15.]  At Step Two, the ALJ found that plaintiff has the following severe impairments:

1.  Depressive disorder
2.  Anxiety disorder
3.  Post-traumatic stress disorder (PTSD)
4.  Mild degenerative disc disease
5.  Mild dextroscoliosis of the lumbar spine
6.  Left bicep tendinitis
7.  Bilateral tinnitus

[Tr. 15.]  At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [Tr. 16–18.]  At Step Four, the ALJ created plaintiff's RFC, which included limitations to account for plaintiff's mental health impairments:

> . . . . He must work in an environment with a noise level of 3 (moderate or less). The claimant can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions. He cannot work at a fast pace such as an assembly line but can stay on task and meet reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented pace. He is further limited to work that requires only occasional changes in the work setting which are introduced gradually and he can have occasional interaction with co-workers and supervisors but no interaction with the public.

[Tr. 18.]  In making her determination, the ALJ discussed and analyzed plaintiff's medical history, including the objective medical evidence, as well as evaluating plaintiff's own testimony concerning the intensity of his symptoms and his daily routine.  [Tr. 18–22.]

5

First, the ALJ noted the symptoms from plaintiff's mental impairments, including poor concentration, difficulty multi-tasking, forgetfulness, communication problems, anti-social behaviors, poor attention span, fatigue, exhaustion, lack of energy, trouble sleeping, anxiety, and panic attacks, among other symptoms.  [Tr. 18–19.]  Next, the ALJ turned to discussing the records from plaintiff's counseling sessions at Community Counseling Center, which included his sessions with his treating psychiatrist, Courtney Johnson, M.D. [Tr. 21.]  For instance, the ALJ cited to records from November 2020 showing that plaintiff's "memory, speech, and emotional state was within normal limits."  [Tr. 21] (citing Tr. 440–42, 444–46, 18).  She also noted that between December 2020 through August 2021, examinations " showed no significant symptoms, where he was oriented, with normal mood and affect, normal speech, normal behavior, and normal judgment and thought content."  [Tr. 21] (citing Tr. 461, 471, 477, 481).  In an August 2021 therapy session with Dr. Johnson, plaintiff's mental status was "largely within normal limits."  [Tr. 21] (citing Tr. 526).

 The ALJ then turned to the medical source opinions, including the opinion of plaintiff's treating physician, Courtney Johnson, M.D.  Dr. Johnson provided two medical opinions, one from January 2021 [Tr. 455–58] and one from August 2021 [Tr. 523–25]. The ALJ summarized her opinions as follows:

> Dr. Johnson opined the claimant would have four absences per month due to bad days, be off-task 10% of the time, and would have marked limitations in understanding/remembering detailed instructions.  She observed no adaptation limitations, marked limitations in the ability to get along with coworkers, and marked limitations in ability to carry out detailed instructions or to work in coordination with or proximity to others without being distracted by them (Ex. 12F). In her other opinion, Dr. Johnson opined the

claimant had off-days of 4 days per month, that he would be off-task 25% or more, marked limitations in ability to understand and remember detailed instructions, to carry out detailed instructions, and to maintain attention and concentration. She also opined the claimant had marked limitations in working in coordination with or proximity to others, and to interact with the public (Ex. 9F).

[Tr. 23]. The ALJ thought Dr. Johnson's opinion was partially supported and somewhat consistent with the record but that it was "more restrictive than the record can support." [Tr. 23.]

The ALJ did not think that plaintiff had marked limitations in the areas identified by Dr. Johnson because the treatment notes show "mild to moderate symptoms, both as reported and upon examinations." [Tr. 23] (citing Tr. 431–54, 459–519, 525–28). She thought that the record did not support a finding that plaintiff would miss work or be off-task because that is inconsistent with his "mild to moderate symptoms, no need for hospitalizations, and no reports of psychosis or paranoia." [Tr. 23–24]. The ALJ concluded that some of Dr. Johnson's findings were inconsistent with plaintiff's "normal thought/content processes, his cooperative behavior, and normal speech, memory, orientation, affect, and linear thought process." [Tr. 24] (citing Tr. 451–52, 526). The ALJ also emphasized his conservative treatment by medication and therapy and that he has never required hospitalization for mental health. [Tr. 24.]

At Step Five, the ALJ concluded that plaintiff had no past relevant work experience that fit the RFC. However, relying on the testimony of a vocational expert, the ALJ concluded that plaintiff could perform jobs such as a cleaner or hand packer. [Tr. 24.] Accordingly, the ALJ determined that plaintiff was not disabled.

7

## IV.    Standard of Review

The Court must affirm the ALJ's decision if it is supported by substantial evidence on the whole record.  42 U.S.C. §§ 405(g); 1383(c)(3).  Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  The "substantial evidence test," is more than a mere search of the record for evidence that could support the ALJ's findings.  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (quoting *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)).  Instead, the Court must also consider any evidence that fairly detracts from the ALJ's decision,  *Id.*, and balance the weight of the evidence in favor of the ALJ's decision against the weight of the evidence that detracts from the ALJ's decision.  *Burress v. Apfel*, 141 F.3d 875, 878 (8th Cir. 1998).  If there is substantial evidence on the record as a whole, the Court must affirm the ALJ's decision, even if the record could support an opposite decision.  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992); *see also Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (citing cases).

For claims, such as this one, filed on or after March 27, 2017, an ALJ evaluates medical opinions and administrative medical findings under 20 C.F.R. § 404.1520c.  The new regulations state that the Social Security Administration will not defer or give any specific evidentiary weight to any medical opinion or prior administrative medical findings, including those from plaintiff's treating sources.  20 C.F.R. § 404.1520c(a).  "An ALJ commits legal error if the ALJ fails to comply with relevant Social Security regulations, which includes the discussion of § 404.1520c factors." *Bradley v. Kijakazi*,

8

No. 1:22-CV-19-SNLJ, 2022 WL 4482407, at *4 (E.D. Mo. Sept. 27, 2022) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020)).  The Court cannot "fill in the gaps" for the ALJ—if the ALJ does not explain her review of the consistency and supportability factors, the Court must reverse.  *Id.*, at *5 (quoting *Lucus*, 960 F.3d at 1069); *see also Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ, even if different conclusions could be drawn from the same evidence, and even if this Court may have reached a different outcome.  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."  *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## V.   Discussion

Plaintiff raises one issue on this appeal, alleging that the ALJ failed to support plaintiff's mental RFC limitations with substantial evidence by failing to properly assess

Dr. Johnson's medical opinion. [1]  [Doc. 10 at 1.]  Plaintiff also argues that the ALJ failed to address several of the mild and moderate limitations opined by Dr. Johnson.

A "medical opinion" is a statement from a medical source about what a claimant can still do despite his impairments, and it includes limitations or restrictions about the claimant's ability to perform the demands of work.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Under the revised Social Security regulations, the agency will not give any specific evidentiary weight to any prior medical findings, including those from the claimant's treating physicians. 20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).  Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines. 20 C.F.R. § 404.1520c.

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors ... in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2).  Reversal of the ALJ's decision is required if,

---

[1] Plaintiff limits the issues on appeal only to the ALJ's assessment of his mental impairments.  Therefore, the Court will limit its discussion of the evidence to only his mental impairments.

in assessing the persuasiveness of a medical opinion, she fails to address the consistency or the supportability factors. *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020)); 20 C.F.R. § 404.1520c(b)(2).  Nevertheless, the ALJ has authority to interpret physicians' findings as a factual matter. *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005)).

First, contrary to defendant's assertion, the ALJ did address the mild and moderate limitations opined by Dr. Johnson.  For example, the ALJ stated that she did not believe the record supported plaintiff's moderate limitation in the ability to perform activities within a schedule and the ability to complete a normal work day/week without interruption, as she discussed earlier.  [Tr. 23] ("Nothing in this provider's records, nor any other records, would support missing work or being off-task.")  This is not the ALJ ignoring Dr. Johnson's opinion.  Rather, she disagreed with it, and an ALJ may discount a physician's opinion when it is internally inconsistent. *Mabry*, 815 F.3d at 391, (citing *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012)).

Other times, the ALJ recognized plaintiff's limitations on the ability to accept instructions and respond to criticism as well as the ability to get along with coworkers and peers, and the ALJ incorporated those limitations into the RFC, which limited plaintiff to only occasional interactions with co-workers and supervisors and occasional changes that are introduced gradually.  [Tr. 18.]  In that instance, the ALJ recognized the moderate limitations, agreed with some of Dr. Johnson's recommendations, and then she incorporated those recommendations into the RFC. *See Deck v. Kijakazi*, No. 1:22-CV-8-

SNLJ, 2022 WL 13688874, at *4 (E.D. Mo. Oct. 21, 2022) (ALJ does not need to adopt a physician's recommendations word-for-word in the RFC). Even if the ALJ could have gone into greater detail, the ALJ is free to accept some, but not all, of a medical opinion. *See Mabry*, 815 F.3d at 391; *Clay*, 417 F.3d at 930 (noting that "it is the ALJ's role to resolve conflicts in experts' opinions," including "conflicts . . . internal to one expert's opinion").

Plaintiff relies on the case *Bradley v. Kijakazi*, but this case differs in several respects. In *Bradley*, the reviewing ALJ provided no reasons for discrediting a medical opinion, even going so far as calling the opinion consistent with the record but nevertheless finding it unpersuasive without explanation. 2022 WL 4482407, at *3. Indeed, the ALJ's analysis in *Bradley* even ended with an incomplete sentence, indicating that the ALJ's own analysis was incomplete. *See id.* In this case, however, the ALJ robustly discussed of all the record evidence—which included Dr. Johnson's own treatment notes—just before turning to the evaluation of the medical source opinions. The ALJ clearly referenced her own evaluation of the medical evidence when she said that Dr. Johnson's findings were "more restrictive than the record can support." [Tr. 23].

Also, unlike in *Bradley*, the ALJ included relevant discussion of and citation to accompanying medical records and treatment notes, which justified the ALJ's evaluation of Dr. Johnson's opinion as inconsistent with and unsupported by the record. *See* [Tr. 23–24]. This is not the case when a reviewing court is without the ability to make a meaningful assessment of a challenge to the ALJ's evaluation of medical opinions. *See Bibb v. Kijakazi*, No. 2:21-CV-70-ACL, 2023 WL 2707439, at *6 (E.D. Mo. Mar. 30, 2023)

12

(quoting *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022)).

Furthermore, Dr. Johnson's other evaluations, such as her suggestion of the time plaintiff would be off-task or miss work, are RFC evaluations that are properly developed by the ALJ.  *See Boyd v. Calvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) ("[I]t is the responsibility of the ALJ, not a physician, to determine a claimant's RFC.")  As the ALJ explained in her opinion, the record evidence did not support such a restrictive RFC as opined by the doctor.  The ALJ relied on Dr. Johnson's own medical treatment notes, such as findings of mild or moderate symptoms, to reach an RFC conclusion.  [Tr. 23–24.]  The ALJ was not required to adopt Dr. Johnson's proposed limitations, and she complied with her duty to formulate an RFC based on the record evidence.

Finally, the ALJ found partially persuasive the state agency psychological consultants review, which concluded that plaintiff could perform simple, repetitive tasks on a sustained basis away from the public.  [Tr. 23, 66, 68–69, 75, 77-79.]  The consultants supported their findings with citations to plaintiff's daily activities, the effectiveness of his treatment and medication, and his mental status examinations.  [Tr. 65, 74–75.]  The ALJ's reliance on these opinions provided further support as to why the ALJ discounted Dr. Johnson's conclusions.  *See* 20 C.F.R. § 404.1513a(b)(1) (State agency psychological consultants are highly qualified experts in disability evaluation).

This is not a case when the Court needs to "fill in the gaps" left by the ALJ.  Placing the ALJ's evaluation of Dr. Johnson's opinion in context with the entirety of the ALJ's opinion, the ALJ makes specific arguments—complete with citations to the record—to

support her findings that Dr. Johnson's opinion is partially inconsistent with and unsupported by the record.  The Eighth Circuit has cautioned that "a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency had no practical effect on the outcome of the case. . . ."  *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (citing *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999)).   Here, any deficiency had little bearing on the outcome of the case.  Even if there was error, the error is harmless.   Given the ALJ's robust discussion of plaintiff's mental and physical impairments, she supported the RFC with substantial evidence and did not leave any unresolved conflicts of evidence that would justify remanding this case.  *See Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005).

For example, the ALJ picked up on the fact that, at the same time plaintiff was reaching out to a law firm to try and obtain disability, he was telling his therapist that he spends much of his time at a recording studio trying to produce a musical album "which will hopefully allow him to make income again."  [Tr. 471]; *see also* [Tr. 21, 482.]  This contradiction, among others, coupled with the medical record gave the ALJ ample reasons for concluding that plaintiff's testimony was not entirely consistent with the medical evidence concerning the intensity, persistence, and limiting effects of his symptoms.  *See Milam v. Colvin*, 794 F.3d 978, 986 (8th Cir. 2015).   Likewise, the fact that plaintiff's symptoms could be conservatively treated with medication also supported the ALJ's RFC.  *Mabry*, 815 F.3d at 391–92 (impairments controlled by treatment and medication are not disabling).

In sum, the ALJ complied with 20 C.F.R. § 404.1520c and evaluated Dr. Johnson's opinion according to the enumerated factors therein.  The ALJ supported the RFC with substantial evidence.  Thus, no remand is necessary.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff's complaint [Doc. 1] is **DISMISSED** with prejudice.  A separate Judgment will accompany this Order.

Dated this 12th day of June, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE